IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

NELSON J. RODRIGUEZ-DIAZ

Plaintiff

v.                                             Civil No. 10-1317 (SEC)

HUMBERTO MARRERO-RECIO, et als.

Defendants

**OPINION AND ORDER**

Pending before this Court is Defendants Humberto Marrero-Recio ("Marrero")[1], Juan Vazquez-Muñoz ("Vazquez")[2], Luis A. Ortiz-Bracero ("Ortiz")[3], and Luis Ledesma-Fonalledas ("Ledesma")[4] (collectively "Defendants") motion to dismiss (Docket # 6), and Plaintiff's opposition thereto (Docket # 7). After reviewing the filings, and the applicable law, Defendants' motion is **GRANTED in part and DENIED in part**.

**Factual Background**

On April 15, 2010, Plaintiff filed suit against Defendants seeking monetary, declaratory and injunctive relief pursuant to 42 U.S.C. § 1983, for alleged violations of his constitutional rights to freedom of speech and association. Docket # 1. Pursuant to the complaint, Plaintiff was a career employee at the Administration of Regulations and Permits ("ARPE") since July 16,

---

[1] Administrator of ARPE.

[2] Manager of ARPE's Service Center in Arecibo.

[3] Manager of ARPE's Service Center in Bayamón.

[4] Special Assistant to ARPE's Administrator.

**CIVIL NO. 10-1317 (SEC)**                                                                 **Page 2**

2002; he held the position of External Coordinator of Client Services in ARPE's Bayamón Regional Office. Between August 9, 2004 and April 15, 2009, he was reassigned to the Mayaguez office in order to allow him to attend law school in Ponce. In April 2009, Plaintiff requested a transfer to Arecibo for the position of Services Coordinator, which was granted and became effective on April 16, 2009. On said date, Plaintiff reported to work in Arecibo. Shortly thereafter, his duties were divided with an employee with a lower ranking position.

On May 13, 2009, Plaintiff received notice that he was being transferred to the Bayamon office effective May 20, 2009. This decision was made by Yulinia Robles ("Robles"), the Bayamon office's director. Plaintiff sought reconsideration on the grounds that the transfer would heavily burden him and his family, but his request was ultimately denied. Plaintiff alleges that thereafter he was placed in a small cubicle with no telephone line or computer, as well as other events that supposedly pinpoint discrimination due to political animus, including the creation of a hostile work environment. He contends that he was gradually stripped of his duties, and the work conditions worsened until his eventual termination under Law 7. Plaintiff holds that he is an active member of the Popular Democratic Party ("PPD"), having worked as Polling Station Coordinator and Director of Finance for his brother in law Ramon Dasta's candidacy for Mayor of Arecibo. He also claims that his political affiliation was well known to his coworkers and to Defendants, who are members of the New Progressive Party ("NPP").

In their request for dismissal, Defendants contend that the complaint consists of conclusory allegations which do not detail sufficient factual evidence to establish causes of action for political discrimination and retaliation. Accordingly, they move for dismissal pursuant to FED. R. CIV. P. 12(b)(6). In his opposition, Plaintiff points to specific allegations in the complaint showing entitlement to relief as to each co-defendant.

**CIVIL NO. 10-1317 (SEC)**                                                                                          Page 3

**Standard of Review**

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to state a claim upon which relief can be granted. First Med. Health Plan, Inc. v. CaremarkPCS Caribbean, Inc., 681 F. Supp. 2d 111, 113-114 (D.P.R. 2010) (citing Fed.R.Civ.P. 12(b)(6)). When deciding a motion to dismiss under Rule 12(b)(6), the court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level." First Med. Health, 681 F. Supp. 2d at 114 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). In so doing, the court construes the complaint in the light most favorable to the plaintiff, accept as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. Id. (Citing Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008)); see also Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 34 (1st Cir. 2002); Correa Martinez v. Arrillaga-Belendez, 903 F.2d 49, 51 (1st Cir. 1990). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." First Med. Health, 681 F. Supp. 2d at 114 (citing Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009)). Specifically, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Iqbal, 129 S.Ct. at 1949. As such, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]'–'that the pleader is entitled to relief.'" First Med. Health, 681 F. Supp. 2d at 114 (citing Iqbal, 129 S. Ct. at 1950 (quoting FED.R.CIV.P. 8(a)(2)).

In sum, when passing on a motion to dismiss the court must follow two principles: (1) legal conclusions masquerading as factual allegations are not entitled to the presumption of truth; and (2) plausibility analysis is a context-specific task that requires courts to use their judicial experience and common sense. Id. (citing Iqbal, 129 S. Ct. at 1950). In applying these principles,

**CIVIL NO. 10-1317 (SEC)**                                                                                              **Page 4**

courts may first separate out merely conclusory pleadings, and then focus upon the remaining well-pleaded factual allegations to determine if they plausibly give rise to an entitlement to relief. Id. (Citing Iqbal, 129 S. Ct. at 1950).

The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F. 3d 301, 305(1st Cir. 2008). Courts "may augment the facts in the complaint by reference to documents annexed to the complaint or fairly incorporated into it, and matters susceptible to judicial notice." Id. at 305-306. However, in judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle v. Berkshire Life Ins., 142 F.3d 507, 508 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996)); Buck v. American Airlines, Inc., 476 F. 3d 29, 33 (1st Cir. 2007); see also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999). Thus Plaintiffs must rely in more than unsupported conclusions or interpretations of law, as these will be rejected. Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

Therefore, "even under the liberal pleading standards of Federal Rule of Civil Procedure 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Rodríguez-Ortíz v. Margo Caribe, Inc., 490 F.3d 92 (1st Cir. 2007) (citing Twombly, 127 S. Ct. at 1965). Although complaints do not need detailed factual allegations, the "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Twombly, 127 S. Ct. At 1965; see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). A plaintiff's obligation to

"provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. At 1965. That is, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true." Parker v. Hurley, 514 F. 3d 87, 95 (1st Cir. 2008).

**Applicable Law and Analysis**

*Section 1983*

It is well-settled that Section 1983, in and of itself, does not create substantive rights; rather, it is a procedural mechanism for enforcing constitutional or statutory rights. Albright v. Oliver, 510 U.S. 266 (1994); Cruz-Erazo v. Rivera-Montañez, 212 F.3d 617, 621 (1st Cir. 2000); Rodriguez Garcia v. Municipality of Caguas, 354 F.3d 91, 99 (1st Cir. 2004). In order for a plaintiff's claim to prosper in a Section 1983 action for deprivation of rights, he "must show by a preponderance of the evidence that: (1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States." Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 151-52 (1st Cir. 2006). This second prong has two aspects: (1) there must have been an actual deprivation of the plaintiff's federally protected rights; and (2) there must have been a causal connection between the defendant's conduct and the deprivation of the plaintiff's federal rights. See Gutiérrez-Rodríguez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989); Mahoney, 424 F.3d at 89; Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 n. 58 (1978); Gutiérrez-Rodríguez, 882 F.2d at 562; Figueroa v. Aponte-Roque, 864 F.2d 947, 953 (1st Cir. 1989).

Therefore, the plaintiff must link each individual defendant to the alleged discriminatory practices. González-Piña v. Rodríguez, 407 F.3d 425, 432 (1st Cir. 2005). Each defendant responds for his own acts or omissions in light of his duties, given that only those individuals who

participated in the conduct that deprived plaintiff of constitutional or statutory rights can be held liable under Section 1983; that is, there is no liability on the basis of *respondeat superior*. Febus-Rodriguez v. Betancourt Lebrón, 14 F.3d 87, 91-92 (1st Cir. 1994); Wilson at 322; Rizzo v. Goode, 423 U.S. 362, 375-77 (1976). Furthermore, the defendant's conduct must be shown to be intentional, grossly negligent, or amounted to a reckless or callous indifference to the plaintiff's constitutional rights. See Simmons v. Dickhaut, 804 F.2d 182, 185 (1st Cir. 1986); Gutiérrez-Rodríguez, 882 F.2d at 562. Moreover, when alleging political discrimination under Section 1983, plaintiffs must produce evidence that partisanship was a substantial or motivating factor in the adverse employment action. See Maymi v. P.R. Ports Authority, 515 F.3d 20, 25 (1st Cir. 2008).

   *Political Discrimination*

   The freedom to belong to and support a political party, or engage in other forms of expression regarding public policy, is "integral to the freedom of association and freedom of political expression that are protected by the First Amendment." Welch v. Ciampa, 542 F.3d 927, 939 (1st Cir. 2008). As a general rule, "the First Amendment protects associational rights... [and] the right to be free from discrimination on account of one's political opinions or beliefs." Galloza v. Foy, 389 F. 3d 26, 28 (1st Cir. 2004). Since public employees "generally enjoy protection from adverse employment actions based on their political affiliations," this Circuit has held that "a government employer cannot discharge public employees merely because they are not sponsored by or affiliated with a particular political party." Id.; see also Maymi, 515 F.3d at 25; Carrasquillo, 494 F.3d at 4 (citing Branti v. Finkel, 445 U.S. 507, 517-19 (1980)).

   The First Amendment's protection against political discrimination also extends to adverse employment actions short of dismissal; that is, "promotions, transfers and recalls after layoffs based on political affiliation or support are an impermissible infringement on the First

**CIVIL NO. 10-1317 (SEC)**                                                                 Page 7

Amendment rights of public employees." Rutan v. Republican Party, 497 U.S. 62, 75 (1990). Furthermore, it "includes changes in employment, which, although not as extreme as dismissal, result in working conditions 'unreasonably inferior' to the norm for the position at issue." Carrasquillo, 494 F.3d at 4 (citations omitted).

The challenged employment action stated above must result in "a work situation 'unreasonably inferior' to the norm for that position." Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1218 (1st Cir. 1989); see also Rosario-Urdaz v. Velazco, 433 F.3d 174, 178 (1st Cir. 2006); Rodriguez-Garcia v. Miranda-Marin, ____ F.3d ____, 2010 WL 2473321 (1st Cir. 2010) (stating "[a]ctions short of dismissal or demotion, including denials of promotions, transfers, and failures to recall after layoff, can constitute adverse employment actions.")(citing Rutan v. Repub. Party of Ill., 497 U.S. 62, 75 (1990)). When deciding whether a challenged employment action resulting in unreasonably inferior conditions has occurred, "[a]ctual functions of the job, not titles, control, and an official description of job functions is a presumptively reliable basis for determining those functions." Lopez-Quiñones v. P.R. Nat. Guard, 526 F.3d at 26 (1st Cir. 2008) (citing Olmeda v. Ortiz-Quiñonez, 434 F.3d 62, 66 (1st Cir.2006)). Generally, "an employee must show a permanent, or at least sustained, worsening of conditions to reach the threshold of constitutional injury. If, however, a temporary change in duties is so inappropriate as to be demeaning and persists...the severity threshold may be met." Agosto de Feliciano, 889 F.2d at 1219. Also, the Court may consider additional factors such as "lost access to telephone and photocopier, poorer office accouterments, [and] worse hours" when deciding if the threshold of constitutional injury has been reached. Id.

Political discrimination claims must be reviewed through a burden-shifting scheme: a public employee must at a minimum show that he engaged in constitutionally-protected conduct and that this conduct was a substantial factor in the adverse employment action. Mt. Healthy City

**CIVIL NO. 10-1317 (SEC)**                                                                                                    **Page 8**

Bd. of Ed. v. Doyle, 429 U.S. 274 (1977). To establish a *prima facie* case of political discrimination, the plaintiff must demonstrate that: (1) he and the defendant belong to opposing political affiliations; (2) the defendant has knowledge of his political affiliation; (3) that a challenged employment action occurred; and (4) that his political affiliation was a substantial or motivating factor behind it. Id. (citing Peguero-Mornta v. Santiago, 464 F.3d 29, 48 (1st Cir. 2006); see also Ruiz-Casillas v. Camacho-Morales, 415 F.3d 126, 131 (2005).

When the plaintiff satisfies this initial burden, the burden then shifts to the defendant to show that "it would have taken the same action regardless of the plaintiff's political beliefs-commonly referred to as the Mt. Healthy defense." Padilla, 212 F. 2d at 74; Carrasquillo, 494 F.3d at 4; Torres-Martinez v. P.R. Dept. Of Corrections, 485 F.3d 19, 23 (1st Cir. 2007); Rodríguez-Ríos v. Cordero, 138 F. 3d 22 (1st Cir. 1998). That is, the defendants must "demonstrate that (i) they would have taken the same action in any event; and (ii) they would have taken such action for reasons that are not unconstitutional." Velez-Rivera v Agosto-Alicea, 437 F.3d 145, 152 (1st Cir. 2006) (citing Mt. Healthy, 429 U.S. at 286-87). If the defendant makes such a showing, the plaintiff may attempt to discredit the tendered nondiscriminatory reason with either direct or circumstantial evidence. Id. at 153.

In order to demonstrate that political affiliation was a substantial or motivating factor behind an adverse employment action, a plaintiff cannot rest on mere juxtaposition of his protected right with unfair treatment. Padilla-Garcia v. Guillermo Rodriguez, 212 F.3d 69, 74 (1st Cir. 2000). A plaintiff does not meet the burden of showing simply by alleging that defendants must have been aware of his political affiliation simply because he is a well-known supporter of that party, has political propaganda on his house or car, held trust positions when that party was in power, or because he suffered an adverse employment action shortly after a change in administration. Gonzalez de Blasini v. Family Dept., 377 F.3d 81, 85-86 (1st Cir. 2004). There

**CIVIL NO. 10-1317 (SEC)**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Page 9**

must be causality effectively linking the protected right and the opposed conduct. In determining the sufficiency of Plaintiff's evidence, the First Circuit has held that although a highly charged political atmosphere alone cannot support an inference of discriminatory animus, when coupled with "the fact that plaintiffs and defendants are of competing political persuasions, may be probative of discriminatory animus." Rodríguez-Ríos, 138 F. 3d at 24. Notwithstanding, political discrimination claims always require "that defendants have knowledge of the plaintiffs['] political affiliation." Martinez-Baez, 394 F. Supp. 2d at 434; Hatfield-Bermudez v. Aldarondo-Rivera, 496 F.3d 51, 61-62 (1st Cir. 2007).

In the present case, it is undisputed that the parties belong to opposing political parties. Defendants, instead, contest that Plaintiff failed to show that an adverse employment action occurred, and that his political affiliation was a motivating factor behind it. Defendants do not expressly address whether they knew Plaintiff's political affiliation. Plaintiff, on the other hand, alleges that his "political affiliation to the PDP was well known by his co-workers, particularly those who are named as defendants in this action." Docket # 1, 3.2. Although "plaintiffs are not held to higher pleading standards in § 1983 actions, they must plead enough for a necessary inference to be reasonably drawn." Marrero-Gutierrez v. Molina, 491 F.3d 1, 9 (1st Cir. 2007). It is well-settled that the foregoing allegation alone is conclusory and thus insufficient under Iqbal to show that Defendants knew about his political affiliations. See Jimenez-Gonzalez v. Alvararez-Rubio, 683 F. Supp. 2d 177, 183-84 (D.P.R. 2010); Del Toro-Pacheco v. Pereira-Castillo, 662 F. Supp. 2d 202, 215 (D.P.R. 2009). Similarly, a plaintiff's general allegation that he is an active member of a political party fails to show that defendants were aware of his political affiliation. See Rivera-Feliciano v. State Ins. Fund Corp., 652 F. Supp 2d 170, 186 (D.P.R. 2009). Nonetheless, Plaintiff does provide additional and separate specific allegations as to some of the co-defendants. Specifically, he proffers additional allegations which satisfy Iqbal's requirements

**CIVIL NO. 10-1317 (SEC)**                                                                                           Page 10

as to Vazquez and Marrero, which will be discussed shortly. Notwithstanding, there are no specific allegations which show that Ortiz knew about Plaintiff's political allegations aside from the before mentioned general pleadings. Similarly, Plaintiff's allegation that he and Ledesma previously "discussed politics openly and expansively," is conclusory, vague and insufficient under Iqbal. Docket # 1, 3.19. As such, Plaintiff fails to set forth a *prima facie* case of political discrimination against Ortiz and Ledesma. Thus the federal claims against Ortiz and Ledesma are **DISMISSED with prejudice**, and the state law claims against said co-defendants are **DISMISSED without prejudice**.

This Court further notes that Marrero and Vazquez did not rebut Plaintiff's *prima facie* case, that is, they did not demonstrate that they would have taken the same actions in any event; and they would have taken such action for reasons that are not unconstitutional. We'll examine the claims against each remaining defendant in turn.

*Claims against Marrero*

In the motion to dismiss, Marrero claims that he was not directly involved in the alleged political discrimination against Plaintiff. Specifically, Marrero argues that even assuming that he knew about Plaintiff's political affiliation, he did not submit Plaintiff to an adverse employment action. To wit, Marrero points out that he did not order Plaintiff's transfer, assigned him to a cubicle nor assigned Plaintiff's duties. As such, Marrero argues that Plaintiff fails to set forth specific factual allegations showing that Marrero harassed and discriminated against him. Instead, Marrero avers that he was included in the suit merely in his official capacity as ARPE's Administrator, and insofar as Section 1983 bars him from responding as a supervisory official on the basis of *respondeat superior,* the claims against him should be dismissed. Docket # 6, 12-13.

**CIVIL NO. 10-1317 (SEC)**                                                                                           Page 11

In opposition, Plaintiff points that Marrero knew about his political affiliation, that he met with Marrero to inform him about the alleged discrimination by Vazquez and Ledesma, and asked Marrero to assist in this matter, but Marrero failed to act accordingly. Plaintiff further contends that Marrero enacted the Administrative Order which stripped him of his official duties, and assigned said duties to a NPP sympathizer.

According to the complaint, on May 13, 2009, Plaintiff received a written notice to report to the Bayamon office for duty on May 20, 2009. Robles, the Director of the Arecibo office, requested Plaintiff's transfer to Bayamon based on a purported "urgent service need." Docket # 1, 3.21 & 3.22. As a result thereof, on even date Plaintiff met with the Human Resources Director Rosemarie O'Connell ("O'Connell"), with Marrero, and lastly with Bayamon's Regional Director Robles, to discuss the transfer and seeking reconsideration of the same. Robles told Plaintiff that she did not object to his remaining in Arecibo, and sent an e-mail to O'Connell about this matter. The next day, Plaintiff went to the Human Resources Office to file a formal request for reconsideration, whereupon Marrero told him "[i]f I were you I would stop pressing this matter since what is coming to you guys under Law 7 is not good." Docket # 1, 3.29. On May 19, 2009, O'Connell informed Plaintiff that his request for reconsideration was denied. Docket # 1, 3.27-3.31.

During the meeting held on May 13, 2009, Plaintiff appraised Marrero of the supposed adverse employment actions he had been subjected to on the basis of political affiliation by Vazquez and Ledesma. Docket # 1, 3.24-3.26. That day, Marrero told Plaintiff that he would "study" the situation and advise him about his determination. Docket # 1, 3.26. However, there is no evidence that he did so. Instead, on May 19, 2009, Plaintiff was told that Marrero asked that he abstain from going to his office or submitting any documents for his consideration, and that Marrero had stated that he felt persecuted by Plaintiff. Docket # 1, 3.31. Moreover, Marrero

**CIVIL NO. 10-1317 (SEC)**                                                                             Page 12

allegedly threatened Plaintiff at the Bayamón office during a visit on May 27, 2009, stating "let me know if you don't know how to do your job because I'm here to sever heads." Docket # 1, 3.38.

In light of the foregoing, it is undisputed that as of May 13, 2009, Marrero was aware of Plaintiff's situation, his political affiliation and his allegations regarding discriminatory conduct by Vazquez and Ledesma. His inaction regarding this issue amounts to a "tacit authorization" of his subordinates' alleged discriminatory practices. Brenes-LaRoche v. Toledo-Davila, 682 F.Supp. 2d 179, 185 (1st Cir. 2010). Indeed, the First Circuit has held that a supervisor "may be liable for the foreseeable consequences of the subordinate's offending conduct if he or she would have known of it but for his deliberate indifference or willful blindness, and if he or she has the power and authority to alleviate it." Id. That is, a supervisor may be found liable "for what he or she does or fails to do" if his or her behavior demonstrates indifference to a plaintiff's constitutional rights. Rosado de Velez v. Zayas, 328 F.Supp. 2d 202, 209 (1st Cir. 2004). Given that the alleged acts of discrimination continued after the meeting, it cannot be said that Marrero used his authority to alleviate the situation, neither was he unaware.[5] Moreover, Marrero's statements and actions towards Plaintiff, if proven true, show discriminatory animus.

Additionally, despite his alleged un-involvement in the removal of Plaintiff's duties, the complaint shows that on July 15, 2009, Marrero signed Administrative Order 20009-9, where he delegated some of Plaintiff's duties to Santos and Santiago, lower-ranking officials, who were supposedly well-known NPP activists. Docket # 1, 3.44, 3.51-3.53.

---

[5] See Rodriguez-Garcia v. Miranda-Marin, __ F.3d __ 2010 U.S. App. LEXIS 12636 (1st Cir. 2010). The Court found Mayor liable on account of his failure to act; i.e., supervisory liability under Section 1983.

**CIVIL NO. 10-1317 (SEC)**                                                                                          Page 13

As such, we find that Plaintiff has pled sufficient facts to make out a plausible entitlement to relief under Section 1983 against Marrero. Therefore, Marrero's request for dismissal is **DENIED**.

*Claims against Vazquez*

In support of his request for dismissal, Vazquez[6] argues that placing Plaintiff in a cubicle without a phone is not a sufficiently pervasive working condition for a political discrimination claim. Defendant's argument rests on Agosto de Feliciano v. Aponte Roque, 889 F.2d 1209 (1st Cir. 1989)(en banc), and its subsequent progeny, holding that an adverse employment action inquiry under Section 1983 focuses on whether an employer's acts, viewed objectively, place substantial pressure on the employee's political views, or result in conditions "unreasonably inferior" to the norm. Bergeron v. Cabral, 560 F.3d 1, 12 (1st Cir. 2009); Agosto, 889 F.2d at 1218.

This Court notes that although Plaintiff's allegation that he and Vazquez "extensively and openly talked politics," is conclusory and insufficient under Iqbal, he does provides additional factual allegations regarding Vazquez's knowledge of his political affiliation. Vazquez does not contest Plaintiff's claims that at one point, Vazquez expressed that "he understood that plaintiff's brother in law would have given the NPP candidate a run for his money in the 2008 election, had he prevailed in the PDP primary." Docket #1, 3.16. Moreover, Plaintiff alleges that he met with Vazquez to discuss Rivera's usurpation of his duties, whereupon Plaintiff told Vazquez "that the fact that he was a PDP activist working for an NPP administration did not preclude them from working as a team." Id. at 3.17. As such, for purposes of the present motion, we find that Vazquez knew about Plaintiff's political affiliation.

---

[6] Vazquez was one of Plaintiff's direct supervisors.

**CIVIL NO. 10-1317 (SEC)**                                                                                          Page 14

As to the alleged adverse employment action, Plaintiff points out that "depriving an employee of all or almost all his work for an indefinite period can be sufficient to establish an 'unreasonably inferior' work environment." Bisbal-Ramos v. City of Mayaguez, 467 F.3d 16, 22-23 (1st Cir. 2006); Rosario-Urdaz v. Velazco, 433 F.3d 174, 179 (1st Cir. 2006). Additionally, he agues that an adverse employment action that falls short of discharge is related to the physical work conditions that an employee may endure after his political party is no longer in power, such as "relocation to distant or substandard office facilities," Acevedo-Garcia v. Vera-Monroig, 204 F.3d 1, 4 (1st Cir. 2000), which is what Plaintiff alleges occurred upon his transfer to Bayamón.

In the complaint, Plaintiff avers that he was stripped of his duties in favor of Rivera. On this point, the record shows that, on April 17, 2009, after his second day in Arecibo, Vazquez divided his duties with another employee, Rivera, who held a lower-rank position, and as a result, Plaintiff was only assigned clerical tasks. Docket # 1, 3.11-3.12. Plaintiff was also assigned to a small cubicle without a telephone line and was denied the keys to the desk's locked drawers, despite the fact that Plaintiff's duties as a Services Coordinator required the same. Id. at 3.13. Plaintiff then met with Vazquez to discuss Rivera's perceived usurpation of his duties, but was allegedly told that Vazquez preferred that Rivera perform these duties because the latter was of his "trust," and that it was his prerogative under Law 7 to transfer Plaintiff's duties to whomever he saw fit. Id. at 3.17. Finally, two days after Plaintiff's transfer to the Bayamón office, Vazquez signed and distributed a memorandum among his personnel naming Rivera as Services Coordinator for the region, despite the fact that Plaintiff occupied said position. Id. at 3.37.

Based on the foregoing, Plaintiff has set forth sufficient allegations against Vazquez to survive dismissal at this time. Accordingly, Vazquez's request for dismissal is **DENIED**.

**CIVIL NO. 10-1317 (SEC)**                                                                 Page 15

*Article 1802 claims*

Art. 1802 of the Puerto Rico Civil Code governs damages caused by fault or negligence. Its scope is very broad and "infinitely embracing." Santiago v. Group Brasil, Inc., 830 F.2d 413, 415 (1st Cir. 1987). The statute requires three elements in order to establish tort liability: (1) an act or omission incurred in negligence or intentionally; (2) that a damage or injury has occurred; (3) a causal relationship between the first two elements. Negligence is defined as the failure to act as a prudent or reasonable person, or failing to foresee or reasonably anticipate the injuries that a prudent or reasonable person would. Colon Gonzalez v. Tienda K-Mart, 154 D.P.R. 510, 518 (2001). Once a plaintiff establishes that the defendant was negligent, he must then show that said negligence was the proximate cause of the injury or damage. Vazquez-Filippetti v. Banco Popular, 504 F.3d 43 (1st Cir. 2007). A cause is proximate when it appears from the evidence that the negligent act or omission played a substantial role in bringing about or causing the damages or injuries. Id. at 49. Foreseeability, then, is an important facet of Puerto Rico tort law.

Considering the similarity of Article 1802 and Section 1983's requirements, if Plaintiff establishes causality under one statute, he may reasonably be entitled to relief under the other. Although Plaintiff bears the burden of proof on this issue, at this juncture, Vazquez, Ledesma and Marrero's request to dismiss the state law claims is **DENIED**.

**Conclusion**

For the reasons set forth above, Defendants' motion to dismiss is **GRANTED in part and DENIED in part**. Plaintiff's federal claims against Ortiz and Ledesma are **DISMISSED with prejudice**, and the state law claims against said co-defendants are **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 20th day of October, 2010.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge